THE STATE ex rel. HENRY B. SMITH, Appellant, v. THE MAYOR and BOARD OF ALDERMEN of the City of Neosho, Namely: PRETTYMAN, Mayor, and PICKENS et al., Aldermen, Appellants.

In Banc, March 30, 1907.

1. CONSTITUTION: Construction: City Indebtedness. The Missouri Constitution was framed by plain men. Its language is plain, its purpose is plain; and it is the duty of courts not to subject its words to any over-nice or extraordinary gloss. When the thing done (for instance, the incurring of a debt by a city) was substantially that which was prohibited, it falls within the constitutional inhibition, simply because according to the true construction thereof, it falls within the thing prohibited.

2. ———: ———: ———: Indirectly. The incurring of indebtedness by a city beyond the maximum amount fixed by the Constitution is absolutely and unqualifiedly prohibited, no matter what the necessity, pretext or circumstance may be, or the form which the indebtedness is made to assume. The constitutional limit binds the courts, the General Assembly, the officials of the city and the people themselves. The city cannot do in an indirect or circuitous manner that which the Constitution has prohibited or enjoined it from doing directly.

3. ———: City Indebtedness: Scaling Debt: Indivisible Contract. Judicial power cannot scale a city debt down to a constitutional limit. Where the ordinance, by which the city issued bonds for the purchase of a waterworks plant and provided for the operation of the plant by the city and the payment to the owners of a stated net sum and in addition semiannual installments for a period of years, was one and an indivisible contract, if the debt thereby incurred is invalid because in excess, in the aggregate, of the maximum limit of five per cent, then the whole debt is invalid; in other words, if the semiannual installments are debts, and when they are added to the bonds

(which of themselves are within the constitutional limit) the whole indebtedness exceeds the maximum limit, then the courts cannot declare the semiannual installments invalid, and the bonds valid.

4. ———: ———: **What is?** The word debt, in the sense the words "indebted" and "indebtedness" are used in the Missouri Constitution, means a promise by the municipality, grounded in a valid consideration, to pay to some person a sum of money now due and payable, or to become due and payable at a future date—an obligation resting on the debtor to pay, with a correlative right in the creditor to enforce payment.

5. ———: ———: **Contract: Double Intendment.** Whenever the words of a contract may have a double intendment, and the one agrees with law and the other is against the law, the intendment that agrees with law will be taken. The presumption is in favor of the legality of the contract. The law does not assume an intention to violate the law, nor will a contract be adjudged to be illegal where it is capable of a construction that will uphold it and make it valid.

6. ———: ———: ———: **Waterworks: Purchase: Bonds: Semiannual Installments: Payment Out of Particular Fund.** A city which could legally create an indebtedness not exceeding $30,000, was authorized by ordinance approved by the voters in 1899 (by way of compromise of previous judgments and debts which the city owed a water company for hydrant rentals amounting to $25,000 and liable in the future to amount to a much larger sum) to issue $25,000 in bonds and acquire an existing waterworks plant, worth, including the judgment, etc., $46,000, by paying $25,000 cash therefor, and to receive all water rentals from consumers and pay the company out of the rentals so received $875 semiannually for twelve years, or $21,000, and if the city failed to pay the installments the company could temporarily take charge of the plant and receive the rentals until the installments then due were paid. *Held*, that the semiannual installments were not a debt, and that the bond issue was valid, and the contract (or ordinance) binding. The contract provided for a special or particular fund for the payment of the installments, without resorting to the power of public taxation, while the bonds were to be paid by means of taxation, and hence the debt to be paid by means of taxes was $25,000.

> *Held*, by **Woodson, J.**, in a separate opinion, that the whole $46,000 was a debt, but as the city under a prior valid ordinance had obligated itself to pay annually to the water company $3,050 as hydrant rentals and had defaulted therein to the amount of $25,000 at the time the compromise ordinance was adopted and would have been liable

in an amount equal to $61,000 on that account had the original ordinance continued in force until the end of the twenty-year period covered by it, and that obligation was renewed in the compromise ordinance, the sum of $46,000 which the city by the compromise ordinance agreed to pay was not a new indebtedness, but a settlement of an existing indebtedness, and the Constitution containing no inhibition against the levy of a tax to pay a valid existing indebtedness in excess of five per cent of the value of the city property, the whole debt was valid.

7. **CITY: Trustee of Special Fund: Mandamus.** Where the city as a trustee of a special fund has accumulated that fund and holds it, it may be restrained from using it for any other purpose, and compelled by *mandamus* to turn it over to its owner. And where a city undertook to collect water rentals from a waterworks plant which it had bought from plaintiff's assignor, and to pay for it in semiannual installments out of water rentals for private water service, it will be compelled to use that fund to pay the installments.

> *Held,* by Woodson, J., in a separate opinion, that the obligation of the city to pay the hydrant rentals having been determined to be valid by prior decisions of this court, and that obligation being renewed in the compromise ordinance by which the city agreed to operate the plant itself and pay the company semiannual installments, those installments were but a continuation of the original obligation, and the city can be compelled by *mandamus* to pay them. *Held,* also, that *mandamus* will lie notwithstanding plaintiff's claim has not been reduced to judgment. The validity of the rentals was litigated in the prior suits.

Appeal from Newton Circuit Court.—*Hon. Henry C. Pepper,* Judge.

REVERSED AND REMANDED *(with directions).*

*Horace Ruark* and *John T. Sturgis* for defendants-appellants.

(1) "Mandamus is strictly a legal remedy with which equity has nothing to do." 2 Spelling, Extraordinary Relief, sec. 1363; 19 Am. and Eng. Ency. Law (2 Ed.), 718, 731; State ex rel. v. Lewis, 76 Mo. 380. (2) In the contract in question the agreement to make payment of the semiannual installments is unconditional

and the date of payment and the amount to be paid are fixed with certainty—thus constituting a debt for the entire amount within the meaning of article 10, section 12, of the Constitution. The debt is absolute—there is no condition precedent, no service to be performed or supplies furnished. Saleno v. City of Neosho, 127 Mo. 627; City of Ottumwa v. Water Company, 119 Fed. 315; City of Laporte v. Gamewell Fire Alarm Co., 146 Ind. 466; Earles v. Wells, 94 Wis. 285; Valparaiso v. Gardner, 97 Ind. 1; Brown v. City of Corry, 175 Pa. St. 528; Brown v. City of Boston, 179 Mass. 321; Windsor v. City of Des Moines, 110 Iowa 175; Walla Walla v. Water Co., 172 U. S. 1; Reynolds v. City of Waterville, 92 Me. 292; Culberson v. Fulton, 127 Ill. 30; Scott v. Davenport, 34 Iowa 208; Hall v. Cedar Rapids, 115 Iowa 199; City of Helena v. Mills, 94 Fed. 919; Doon Twp. v. Cummins, 142 U. S. 366; Spellman v. Parkersburg (W. Va.), 14 S. E. 279. It makes no difference that the debt sued for is the result of a compromise of a claim in favor of the Water Company on a liability which might accrue against the city. Austin v. McCall (Tex.), 68 S. W. 791. And being in excess of the limitation provided by the Constitution, the entire indebtedness is void and cannot be enforced in any form of action at law or equity. Prickett v. Marcelaine, 65 Fed. 469; Thornburg v. School District, 175 Mo. 12; Buchanan v. Litchfield, 102 U. S. 278; City of Litchfield v. Ballou, 114 U. S. 192; Gamewell Fire Alarm Co. v. Laporte, 96 Fed. 664, 102 Fed. 417; Lake County v. Rollings, 130 U. S. 662. (3) The judgment in case of Matters et al. v. City of Neosho is not *res judicata* upon the issues herein. Relator was not a party to that proceeding nor bound thereby. Neither are the issues in this case the same as in the Matters case. (a) In order for a judgment to be binding in favor of any person it must also be binding against him. The judgment or decree must conclude both parties or it will conclude neither. The estoppel must be mutual. No

person can avail himself of a judgment as *res judicata* in his favor who has not shared the trouble or expense of a trial nor exposed himself to the hazard of an adverse decision. 1 Greenleaf on Ev. (16 Ed.), secs. 523 and 524; 24 Am. and Eng. Ency. Law (2 Ed.), 730; 1 Freeman on Judgments (4 Ed.), sec. 159; 1 Van Fleet's Former Adjudication, p. 111; State ex rel. v. St. Louis, 145 Mo. 565; Lyons v. Cooledge, 89 Ill. 529; Woods v. Henry, 77 Mo. 277; St. Louis Ins. Co. v. Cravens, 69 Mo. 77; State ex rel. v. Barker, 26 Mo. App. 494; Mail v. Maxwell, 107 Ill. 554; Allred v. Smith, 135 N. C. 443; Peebles v. Pate, 90 N. C. 348; Starkie on Evidence, 332; Coke on Littleton, 252. The owner of municipal bonds or other obligations to pay is not bound by a judgment in a suit by taxpayers against the municipality or its officers to which such owner is not a party. Town of Pana v. Bowler, 107 U. S. 529; Morrill v. Smith County (Tex.), 33 S. W. 899; 2 Van Fleet, Former Adj., sec. 570; Town of Lyons v. Cooledge, 89 Ill. 529; Mail v. Maxwell, 107 Ill. 554; Carroll County v. Smith, 111 U. S. 556; Warren County v. Marcy, 97 U. S. 96; Town of Enfield v. Jordan, 119 U. S. 680. (b) And the parties must also have occupied adversary positions during the trial upon issues formed between them by the pleadings. 24 Am. and Eng. Ency. Law (2 Ed.), 731; 1 Freeman on Judgments (4 Ed.), sec. 158; 1 Van Fleet's Former Adj., sec. 256; State Bank v. Bartle, 114 Mo. 281; Carmody v. Herrick, 85 Mo. App. 659; McMahan v. Geiger, 73 Mo. 145. (c) Relator was not only not a party in the Matters case but would not have been a proper party to that proceeding and could not have been joined as a relator and adversary party to the city. State ex rel. v. Fraker, 166 Mo. 142; State ex rel. v. Burkhardt, 59 Mo. 75. The issues involved in the Matters case did not concern the public as a whole, but only the taxpayers of the city by and for whom the suit was prosecuted (relator Smith is shown to have been neither a taxpayer nor a resident of the city).

Where a suit is brought by a few on behalf of a class the decree binds the entire class having a common interest, but does not bind those not belonging to the class and not having a common interest with those prosecuting it, so that the Matters judgment was not binding on relator Smith. 24 Am. and Eng. Ency. Law (2 Ed.), 758. (d) The proceedings in the Matters case were not *in rem*. At the time of the institution of that action there was no *res* in existence to seize. At most it was a proceeding to create a fund. There was no seizure into the custody of the court and there was no published notice to all the world. These are the distinguishing features of a proceeding *in rem*. Waples on Proceedings *in rem*, secs. 2, 41-42 and 43; Herman on Estoppel and Res Adjudicata, 304; Town of Pana v. Bowler, 107 U. S. 529. In order for a proceeding *in rem* or *quasi in rem* to be binding upon all the world as *res judicata*, notice of the proceeding must be published to the world and an opportunity afforded anyone to appear and defend. Such proceedings only bind the world when all the world is made a party by published notice. Waples on Proceedings *in rem*, secs. 64, 625-628; Herman on Estoppel and Res Adjudicata, sec. 219; Cooley's Constitutional Limitations (7 Ed.), p. 580; Troyer v. Wood, 96 Mo. 480; Hunt v. Searcy, 167 Mo. 158; Jones v. Yore, 142 Mo. 38; State ex rel. v. Hadlock, 52 Mo. App. 297; Woodruff v. Taylor, 20 Vt. 65; Scott v. McNeal, 154 U. S. 34; State v. Burton, 47 Kan. 44. (e) This suit is not for the same cause of action as the Matters case. No claim was made in the Matters case by pleadings, or otherwise, that the contract was void because a debt was created in excess of the constitutional limitation. Garland v. Smith, 164 Mo. 22. (f) The fact that the State is a nominal party both in the Matters case and the present suit is without force. The alternative writ in mandamus, which under our law is the first pleading, must, like all writs, run in the name of the State. The

use of the name of the State or sovereign is merely nominal and the suit is "regarded as in the nature of an action by the person in whose favor the writ is granted." State v. Burton, 47 Kan. 44; State ex rel. v. Lewis, 76 Mo. 380; State v. Stock, 38 Kan. 154; Kimberly v. Morris, 87 Tex. 637; 2 Spelling, Extraordinary Relief, secs. 1364, 1623; 13 Ency. Pl. and Pr., 669 and 670. Proceedings for a writ of mandamus are civil proceedings, the State being merely a nominal party. 2 Ind. (2 Cart.) 423. And in many jurisdictions the state is not even a nominal party. Rider v. Brown (Okla.), 32 Pac. 341; Heinz v. Moulton, 7 S. D. 272; State v. Bates (S. C.), 24 S. E. 755; Malain v. Judge Third Dist., 29 La. Ann. 793; Kimberly v. Morris, 87 Tex. 637. (4) The doctrine of estoppel cannot be applied to validate a contract which the corporation had no power to make. Thornburg v. School Dist., 175 Mo. 12; Wheeler v. Poplar Bluff, 149 Mo. 46; State ex rel. v. Murphy, 134 Mo. 567; City of Unionville v. Martin, 95 Mo. App. 38; Book v. Earl, 87 Mo. 246; Walcott v. Lawrence Co., 26 Mo. 272; City of Litchfield v. Ballou, 114 U. S. 192; Bigelow on Estoppel, 466; 20 Am. and Eng. Ency. Law (2 Ed.), 1182; Buchanan v. Litchfield, 102 U. S. 278; State ex rel. v. Helena, 24 Mont. 521; French v. Burlington, 42 Iowa 617; Laporte v. Gamewell Fire Alarm Tel. Co., 146 Ind. 466; Gamewell Fire Alarm Co. v. Laporte, 96 Fed. 664, 102 Fed. 417. (5) No recovery can be had in this case based on any claim arising under ordinance No. 113. That ordinance was repealed by ordinance No. 232, to which plaintiff's assignor gave its assent. By ordinance No. 232 an entirely new contract was substituted for No. 113. (a) Relator having brought suit upon ordinance No. 252 cannot recover under the provisions of ordinance No. 113 and the judgment rendered thereon. He cannot sue upon one cause of action and recover upon another. Stix v. Matthews, 75 Mo. 96; Hollman v. Lange, 143 Mo. 100; Cole v. Armour, 154 Mo. 333. (b) The ob-

ligation to pay under ordinance No. 113 is a general one and no special fund provided. Before resort can be had to mandamus, a party must first establish the validity of his claim in an action at law. Mansfield v. Fuller, 50 Mo. 338; Cloud v. Pierce City, 86 Mo. 357; Payne v. School Dist., 87 Mo. App. 415. (c) The deed from Neosho City Water Company to the city carried with it all rents subsequently accruing and *ipso facto* ended the obligation of the city to pay water rentals. Culverhouse v. Whorts, 32 Mo. App. 419; Vaughn v. Locke, 27 Mo. 290; Latta v. Weiss, 131 Mo. 230; Page v. Culver, 55 Mo. App. 606.

*Thurman, Wray & Timmonds* and *George Hubbert* for plaintiff-appellant.

(1) The money having arisen out of the compromise contract, from the use of the property turned over by the company to the city, in which a beneficial interest was clearly reserved by the company; and the money being so made available, and under the immediate control of the city, for application as the installments matured, by the simple act of drawing an appropriate warrant—there was no contracted debt in the contemplation of the constitutional prohibition. 1 Dil. Mun. Corp., sec. 135. Where there is provided, as there is here, by reasonable stipulation and arrangement, a particular fund, without necessity for resort to the power of public taxation against the assessable property of the municipality, out of which special fund the obligation for current or continuing uses of property, services or supplies, may be satisfied as they arise, there is no debt contracted, within the constitutional or statutory inhibition against contracting debts beyond specified limitations relating to property values or without concurrent provisions for payment. Winston v. City of Spokane, 41 Pac. 888; Simile v. Fresno Co. (Cal.), 44 Pac. 556; Donahue v. Morgan (Colo.), 50 Pac. 1038; Faulkner v. City of Seattle

(Wash.), 53 Pac. 365; City of Valparaiso v. Gardner, 97 Ind. 149; Fort Dodge Co. v. Fort Dodge, 115 Iowa 568; Swanson v. Ottumwa, 91 N. W. 1048; Fidelity v. Fowler, 113 Fed. 560; Laporte v. Gamewell (Ind.), 58 Am. St. Rep. 359; Wade v. County, 174 U. S. 499; Winston v. Fort Worth, 47 S. W. 740; McNeil v. Waco, 33 S. W. 322; Fourth Natl. Bk. v. City of Dallas, 73 S. W. 841; Mitchell County v. City Natl. Bk., 91 Tex. 841; Brockenbrough v. Board of Charlotte, 46 S. E. 28; Doland v. Clark, 143 Cal. 181; Sackett v. New Albany, 88 Ind. 473. (2) But the city should be held estopped, and not be permitted to repudiate its own law as enacted by ordinance 232, after having used said law to acquire the possession and earnings of the waterworks for its own advantage. It is well settled, as a general proposition, that, "where a party has availed himself of an unconstitutional law for his own benefit, he cannot, in subsequent litigation with others, aver its unconstitutionality as a defense." Daniels v. Tearney, 102 U. S. 415; Vickery v. Board of Comrs., 134 Ind. 556; Purcell v. Conrad, 84 Va. 573; Willis v. Board of Comrs., 86 Fed. 876; Arthur v. Israel, 15 Colo. 153; Folger v. Clark, 80 Me. 242; Butler v. Ellerbe, 44 S. C. 269; Davis v. Wakelee, 156 U. S. 691; State v. Mastin, 103 Mo. 512; O'Brien v. Wheelock, 184 U. S. 450; St. Louis v. Davidson, 102 Mo. 155. The relations of a fourth class city to the subject-matter of such contracts as we have here, is that of a contracting and business proprietary, dealing with the waterworks plant for its own private advantage, and the rule is to exact of such a city the performance of its obligations under its contracts, after the manner of dealing with private individuals or corporations. State ex rel. v. St. Louis, 145 Mo. 572; Water Co. v. Aurora, 129 Mo. 583; Neosho City Water Co. v. City of Neosho, 136 Mo. 505; Lamar W. & L. Co. v. Lamar, 140 Mo. 145. (3) The objects and terms of the contract, properly understood, are not obnoxious to the Constitution.

And if necessary to a proper understanding of it, resort may be had to the fundamental rules of construction in such cases. Any question as to the true meaning or purpose of the parties, i. e., whether within or without the prohibitions of the laws, should be resolved, in case of doubt, in favor of the contract as a valid obligation. It must be assumed, to start with, that the parties intended, not to violate, but to refrain from the violation of the law. And that intention will account for the diverse and severable stipulations in the ordinance; and such intention is entitled to the first consideration of the court. Bishop on Contr., secs. 460, 420, 417; Jones on Construction of Contract, 224-6; 1 Beach, Contr., sec. 717. The reference in ordinance 232 to the previous ordinance, the judgment against the city, etc., make the same undoubted parts of the contract under consideration; and all the papers, deeds, resolutions and documents pertaining to the matter, and contemplated by the parties as effecting some part of the compromise agreement, must be taken as constituent parts of the existing contract. 1 Beach, Contr., secs. 706, 713; Jones on Constr. Contr., 213. (4) The judgment in the mandamus case of State ex rel. v. Matters et al., in pursuance of which the money is appropriated to, and held in the city treasury for the payment of the hydrant rentals, now reduced to $1750 per year, fixes the status of the fund in question, and so binds the defendants in their dealings with it and duty towards the same; and relator is entitled to have payment thereof as assignee of the Water Company. State ex rel. v. Trammel, 106 Mo. 520; State ex rel. v. Rainey, 74 Mo. 229; Harmon v. Public Works, 123 Ill. 122; State ex rel. v. Rainey, 74 Mo. 229; City of N. O. v. Bank, 167 U. S. 371; Bear v. Board of Comrs., 122 N. C. 434; Ashton v. City, 133 N. Y. 187; Gallaher v. City, 34 W. Va. 730; Sauls v. Freeman, 24 Fla. 209; Cannon v. Nelson, 83 Iowa 242;

203 Sup.—4

McIntosh v. City, 112 Fed. 705; Holt Co. v. Natl. Life Ins. Co., 80 Fed. 686; Home Co. v. Mayor of City (Ky.), 68 S. W. 15. (5) Mandamus is the remedy to enforce the performance of the duty of the municipality and its officers relating to the payment of a private claim out of a specially provided or authorized fund; and resort of the relator to ordinary action was not necessary or proper. State ex rel. v. Adams, 161 Mo. 365; Moody v. Cass County, 74 Mo. 307; Campbell v. Polk Co., 49 Mo. 214; Kingsberry v. Pettis Co., 48 Mo. 207; Pettis Co. v. Kingsbury, 17 Mo. 479.

*Horace Ruark* and *John T. Sturgis* for defendants -appellants in reply.

(1) That the semiannual payments in question are not payable solely and exclusively out of the water rentals but do constitute a general promise to pay and liability of the city, we thought too plain a proposition for argument or citation of authorities. As relator seems yet to contend the contrary, we cite a few cases to the proposition that unless the municipal obligation clearly and unmistakably limits the payment to a special fund and excludes general liability, the obligation will be held to be general with the special fund as additional security. Fowler v. Superior, 85 Wis. 411; Tiedeman, Municipal Corp., sec. 194a; Merrell v. Monticello, 22 Fed. 594; Bank v. Evansville, 25 Fed. 391; Avery v. Job, 25 Oregon 520; Martin v. Tyler (N. Dak.), 60 N. W. 400; Redmon v. Chacey (N. Dak.), 73 N. W. 1081; Kimball v. Board of Com., 21 Fed. 145; 21 Am. and Eng. Ency. Law (2 Ed.), 79; Clark v. Des Moines, 19 Iowa 199 (cited with approval in International Bank v. Franklin Co., 65 Mo. 113); U. S. v. Clark County Court, 96 U. S. 211; Darlington v. Trust Co., 78 Fed. 596. (2) The Supreme Court of Indiana has passed on every phase of this question of what annual payments constitute a debt in the ag-

gregate within the meaning of a constitutional provision the same as ours. It was one of the courts, Valparaiso v. Gardner, 97 Ind. 1, which announced the doctrine followed by this court in Saleno v. Neosho, 127 Mo. 641, that a contract for annual supplies to be furnished for a series of years and to be paid only as furnished, was not a debt in the constitutional sense for the total of the annual payments. It has also defined and applied the special fund doctrine, Straib v. Cox, 110 Ind. 299, limiting it to cases where the obligation is payable solely and exclusively from a special fund "and from no other source" so that in no event is the municipality liable. Yet this court upholds by its later decisions, not impairing the others, however, in all its vigor the doctrine now contended for by defendant, that whenever the installments to be paid are in the nature of purchase money, the payments being fixed and certain to come due and not dependent on supplies to be furnished or services to be rendered, then such installments are a debt for the total amount within the meaning of the constitution. Laporte v. Fire Alarm Co., 146 Ind. 466; Voss v. Waterloo (Ind.), 71 N. E. 208; Quill v. Indianapolis, 124 Ind. 292; Valve Co. v. Crown Point, 76 N. E. 536. The Supreme Court of Iowa has likewise considered the three phases of this question under its constitutional provision identical with ours. Dively v. Cedar Falls, 27 Iowa 227; Hall v. Cedar Rapids, 115 Iowa 199; Windsor v. Des Moines, 110 Iowa 175. So the Federal courts early adopted the doctrine followed in the Saleno case. Budd v. Budd, 59 Fed. 735; Water Co. v. Walla Walla, 60 Fed. 957. But those courts have very greatly restricted, if not totally repudiated, the special fund doctrine. Ottumwa v. Water Co., 119 Fed. 315. And maintain with special vigor the doctrine contended for by defendants. Walla Walla v. Water Co., 172 U. S. 1; Helena v. Mills, 94 Fed. 916. The courts of Illinois announced the doctrine ap-

plicable to contracts for annual supplies of water, light, etc., as followed in the Saleno case. Water Co. v. Carlyle, 31 Ill. App. 339, 140 Ill. 445. It has confined the special fund doctrine to the narrowest limits and upheld the doctrine contended for by defendants under contracts more doubtful in their terms than the one at bar. Joliet v. Alexander, 194 Ill. 497; Springfield v. Edwards, 84 Ill. 632; Culbertson v. City of Fulton, 127 Ill. 30. The difference between a contract for supplies, or services to be furnished for a period of years, the payments being dependent on the supplies or service being furnished, in which case the contracted payments are not debts till the supplies or service are so furnished; and a contract of purchase providing for future payments in which the debt is a present one though payable in the future, is so well settled as to leave discussion useless. Reynolds v. Waterville (Me.), 42 Atl. 557; Crogster v. Bayfield County (Wis.), 74 N. W. 635.

LAMM, J.—Relator, Henry B. Smith (hereinafter called plaintiff), sued out an alternative writ of mandamus in the circuit court of Newton county against the mayor and board of aldermen of the city of Neosho, whereby respondents (hereinafter called defendants) as such officers, were commanded to forthwith issue and deliver, or show cause why they have not issued and delivered, warrants in lawful form upon the treasurer of said city, requiring him to pay certain semiannual installments of $875 each, to said Smith out of a certain fund created by the earnings and revenues of its waterworks, subsequently to 1900, arising from paid water service to private consumers. On issue joined by the reply to the return to said writ, the alternative writ of mandamus was made peremptory, but for a less amount than set forth in the alternative writ.

Defendants complain that any relief was granted,

*i. e.,* that the relief was too great. Plaintiff complains that more relief was not granted, *i. e.,* that the relief was too small. On cross-appeals, with a joint bill of exceptions, both parties bring the case here for review.

A judgment below was entered on May 5, 1904. It seems that pending the suit two of the defendants, to-wit, Pickens and Sims, had gone out of office as aldermen and Ed Rathell and E. E. Carnes had been elected and installed as their successors; and, further, that the term of office of Charles E. Prettyman as mayor had expired, and J. W. Lamson had been elected and inducted into the office of mayor. In view of these official changes, on the motion of plaintiff, and prior to the rendition of judgment, the foregoing newly-elected and qualified officers were substituted as defendants in place of their said predecessors.

Neosho is a city of the fourth class. In the region around about that historical town is a spring called the Clark Spring, or Big Spring. It may be inferred from certain narrations in an ordinance (presently to be considered) that one Clark owned this spring and held a permit to lay pipes in one or more streets of Neosho to furnish water to its inhabitants therefrom. Be that one way or the other, there is another spring, known locally as the Elm Spring, some five and one-half miles from the city; and in September, 1890, one Saleno, a resident of Bay City, Michigan, was granted a franchise to furnish water to Neosho from the Elm Spring, through wooden pipes, called "improved Wykoff pipes" and a plan known as "gravity pressure."

The Saleno franchise and contract are set forth in an ordinance known as No. 113. The caption of that ordinance is as follows: "Ordinance No. 113. An ordinance providing for a supply of water to the city of Neosho, Missouri, authorizing S. V. Saleno to construct and maintain and operate waterworks, contracting with him for a supply of water for public use and giv-

ing said city an opportunity to purchase said works."

By section 1 of the ordinance there was "given and guaranteed" to said Saleno and his assigns for twenty years from the date of the adoption of the ordinance the exclusive right and privilege of supplying the city of Neosho and its inhabitants with water.

By section 2, Saleno and his assigns were authorized to establish, construct, maintain and operate waterworks in the city of Neosho, to receive, take, store, purify, conduct and distribute water through the city and construct and maintain mains and pipes through the streets, alleys, lanes, public grounds and across streams and bridges in said city and to maintain engines and other appliances necessary for the conduct and carrying on of such works, etc.

Section 3 provides that the board of aldermen would accept a named source of water supply as sufficient in quality, quantity and pressure, when furnished through a ten-inch pipe up to the corporate limits. This section further sets forth the required pressure, the character of pipe to be used and directs where one main should be laid. It specifies the internal diameter of and provides for additional pipes as the board of aldermen from time to time direct, subject to the condition that one fire hydrant should be ordered for every four hundred feet of additional pipe.

Section 4 provides for the character of fire hydrants and sets forth that for the first five miles of pipe laid there should be fifty hydrants erected at places designated by the board of aldermen.

Section 5 provides that the city should pay Saleno and his assigns an annual rental of $2,000 for said fifty hydrants; and for all hydrants in excess of fifty, an annual rental of $30 each—payments to be made semi-annually on the 1st day of January and July each year, and to commence when said waterworks be completed and accepted by the board of aldermen, and that said

payments continue for the full terms of twenty years unless the city in the meantime should become the owner of the works.

Section 6 provides that Saleno and his assigns might mortgage said franchise, rentals, and plant; and, in such case, a provision is made for the city to pay the interest on the bonded indebtedness out of said hydrant rental.

Section 7 sets forth what taxes were to be levied to carry out the ordinance purpose and out of what funds the hydrant rental and the interest on such mortgage should be paid.

Section 8 provides for installing water meters and sets forth in detail the meter rates to be charged for sundry sorts of water service.

The ordinance continues at great length through thirteen more sections to say that the city should pass an ordinance protecting the source of water supply from pollution and the waterworks property from injury; for the free use of water from hydrants to extinguish fires, and to flush gutters and sewers for sanitary purposes; for four free public watering places for domestic animals, and the free use of water for public schools and offices occupied for city purposes; for a test and acceptance of the works; for an option to purchase in one year after the completion of the works, or in any year thereafter, on an appraisement; that if the city did not purchase within the first twenty years, then the franchise should be extended for another term of twenty years with the same right of purchase as before; that the works should be completed by June, 1891; that the ordinance should become a binding contract on Saleno's acceptance of it; that the wilful and malicious injury of any of the fixtures or other property pertaining to said waterworks should be a misdemeanor; that Saleno might shut off the water temporarily for purposes of necessary repair; that the rights grant-

ed to Saleno were only such as the city now possessed or might hereafter possess, but the city was not bound to acquire rights for the use of Saleno, or pay any damages for property used or taken for the construction or maintenance of the plant. The right was further reserved to the board of aldermen to rescind and revoke the ordinance if the works were not completed in the time and manner prescribed. And if Saleno or his assigns without reasonable cause failed to comply with the provisions of the ordinance, then a plan for the annullment of the contract by a suit in a court of competent jurisdiction was provided. Saleno was to give bond for $2,000 that he would comply with the contract. Finally, all ordinances and parts of ordinances inconsistent were repealed; and it was further provided that the right of Clark to deliver water to citizens from the Clark Spring, or Big Spring, was excepted from the Saleno grant, and Saleno's exclusive privilege was diminished thereby; but it was agreed that Clark would not be permitted to repair or extend his pipes or increase his capacity in any way or extend his pipes through streets or change their present location after the passage and approval of ordinance No. 113.

Saleno built and put in operation the waterworks system contemplated by the foregoing ordinance and, at a time not disclosed by the record, but presumably in 1891, completed the same; and the city accepted the works, and Saleno commenced furnishing water under his contract. Presently Saleno, plaintiff and divers others, organized a corporation with $50,000 capital— 50 per cent paid up—under the style and designation of "The Neosho City Water Company," and this corporation took over Saleno's water franchise and water plant and all his contractual rights under ordinance 113 and thenceforward stood in his shoes. At a certain time, not disclosed, additional pipe was laid and additional fire hydrants were erected, as provided by said

ordinance, until the total number of fire hydrants under rental by the city was eighty-five; and the annual rental was $3,050. This rental under the ordinance scheme, as said, was to be paid semiannually out of the city's revenues and collected by taxation.

At a certain time thereafter a squabble arose, the city defaulted in the payments of its semiannual hydrant rental,. and, thereupon, a long drawn out and bitter litigation sprang up—one suit following on the heels of another. Two of these cases came to this. court, and others were tried, *nisi*, and not appealed, and still others were pending at the time the compromise (presently to be considered) was entered into between the warring parties. In a general way it may be said that the bone of contention between Saleno and Neosho, and between The Neosho City Water Company and Neosho, was the validity of Saleno's contract; and the binding efficacy of that contract was declared in two cases in this court (Saleno v. City of Neosho, 127 Mo. 627; Neosho City Water Co. v. City of Neosho, 136 Mo. 498— both in Banc), where the curious may learn with what zeal and skill the validity of ordinance 113 was assailed on one side and defended on the other. By the last of the above cases it was held that the provision for the renewal of the franchise for a second term of twenty years was not valid; but the validity of the franchise and contract for the first term of twenty years was again sustained; and, furthermore, plaintiff was held entitled to interest on defaulted semiannual payments of hydrant rentals. Both these cases held that the semiannual installments for the whole period must not be taken as aggregated in determining the present indebtedness of the city under the constitutional inhibition set forth in section 12, article 10—that the future installments of hydrant rental depended upon a condition precedent which might never be performed, and which installments of rental would not ripen into a

debt (within the constitutional purview) until such condition precedent was performed.

In 1895 the situation was so acute as to bespeak a serious attempt at compromise if both parties litigant were to avoid the distress of floundering in a bog of interminable hostility. Accordingly, compromise ordinance No. 7 was passed; but failed of adoption at an election called for that purpose, and may be put to one side. In the meantime a mandamus suit was instituted by the Neosho City Water Company in the circuit court of Barton county, resulting in the issue of a peremptory writ of mandamus against the city for a large sum.

The city was paying on this judgment, and possibly on others, in dribbling payments from existing revenues; and, on the 14th day of February, 1899, the unpaid portion of these judgments, together with the unpaid semiannual installments of hydrant rental not merged in judgment but covered by pending suits, amounted to a large sum. It is to be inferred, too, that on that date there was hydrant rental due which was not in suit. The exact amount of the unpaid accrued hydrant rental (whether merged in judgment, or in suit, or not in suit) cannot be determined with accuracy on the record here. Plaintiff contends that, with interest, the amount was so much as $25,000. Defendants contend, and (considering the testimony) with great show of reason, too, that, taking note of the payments made and the fact that the whole number of eighty-five hydrants had not been in use from the very start, the amount did not exceed at most $15,000, and was probably less than that. In the view hereinafter taken of this case it will not be necessary to determine and settle this disputed question of fact. Suffice it to say that, things having gone from bad to worse, on said 14th day of February, 1899, a scheme for a compromise was evidenced by an ordinance, No. 232, and again sub-

mitted to the people. Defendants insist there is no evidence in the record that this scheme was ever adopted at an election held in pursuance of the ordinance; but the pleadings, including admissions in the return of defendants, proceed on the assumption that an election was held and the compromise contract was duly ratified at such election. Not only so, but the whole case proceeded below on the theory that the scheme was ratified, and therefore, this court must adopt that theory on review.

Ordinance No. 232 is as follows:

"ORDINANCE No. 232.

"An ordinance to provide for the compromise of all matters of difference between the City of Neosho and the Neosho City Water Company arising out of the contract ordinance of the 22d day of September, 1890, numbered 113; and for the city of Neosho purchasing, taking over and operating the waterworks constructed under said ordinance; and for the satisfaction of the judgments and hydrants rental claims against the said city of Neosho in favor of said Neosho City Water Company; and for the securing a better fire protection and water service for the said city of Neosho and selling water to its inhabitants; and for the issue of twenty five thousand dollars ($25,000) of interest bearing ten (10) twenty (20) (years) city bonds, and the levy of a tax for a sinking fund to pay the same; and for securing to the said Neosho City Water Company semi-annual installment payments, for twelve (12) years, of eight hundred and seventy-five dollars ($875) each, for use of waterworks as a compromise measure; and for the repeal of said ordinance No. 113 so far as inconsistent with this ordinance.

"Be it ordained by the board of aldermen of the city of Neosho as follows:

"Section 1. That, with the assent of the voters of said city, by a two-thirds affirmative majority vote, at

the time hereinafter provided, the following contract is hereby authorized to be made, and the same may be accordingly certified by the mayor and clerk and authenticated by the seal of the city of Neosho, Missouri, as a final compromise contract with the Neosho City Water Company, as assignee of S. V. Saleno, viz: This contract is made in full compromise and settlement of all and every judgment, claim and demand against said city under ordinance No. 113, and it is agreed as follows:

"The Neosho City Water Company, as assignee of said S. V. Saleno, agrees to transfer, by proper legal conveyance, the title, possession and use of the entire system of waterworks, land, water springs, pipe lines, pipes, right of way, easements, franchises, hydrant, and all other property thereto belonging or used in operating the same, free and clear of any charge or incumbrance, to the city of Neosho, with the right to the city to operate and control the same, collect all rent or toll for supplying water to all persons whatsoever, and have and use, subject to the reservation hereinafter mentioned, all the proceeds and hydrant rental of said plant for a period of twelve (12) years from January 1, 1899, and release the city from all hydrant rental and liability relating to the same under the provisions of said ordinance No. 113, except as herein expressly provided; and in consideration thereof the city agrees to pay for the use, control and possession of said works the sum of $875 every six months, on or before the first day of July and first day of January of each year for a period of twelve years, from January 1st, 1899, and in consideration of said payments and the payments of twenty-five thousand dollars for judgments and in full settlement of all claims and differences existing between said parties as in this ordinance provided, it is agreed and contracted that the city shall own said works absolutely, and it is further agreed that

the Neosho City Water Company, as the legal assignee of said S. V. Saleno, shall, on the day the twenty-five thousand dollars is paid to said company as herein provided, make out, execute and deliver a deed and conveyance in due and legal form assigning, setting over and conveying to said city the entire plant and waterworks system including land, water springs, right of way, pipe lines, pipes, hydrant, easements, franchises, and all other property of every kind belonging thereto, or used in connection therewith both real and personal, with all the office books for the use in continuing the service of water to private persons, free of all liens, charges and incumbrances, and will give a perfect title to the same to the city of Neosho.

"On the payment of the said sum of twenty-five thousand dollars by said city to said Neosho Water Company, all judgments and other indebtedness, except as herein provided, in favor of said Water Company and against said city shall be deemed fully paid and discharged, and said Water Company shall cause to be entered on the proper court records formal satisfaction of each and every such judgment and all suits of whatever nature now pending between said parties shall be dismissed, each party paying its own costs.

"Section 2. It is provided, however, that there shall be reserved to the said company for additional security for the payment of said sum of eight hundred and seventy-five dollars semiannually the following rights, viz: All earnings, proceeds and revenues arising from water service to private consumers for each and every successive period of six months during the continuance of the contract hereby authorized, to-wit, twelve years, shall not be used for any other purpose than to pay the semiannual installment of eight hundred and seventy-five dollars for such term for the use of the waterworks as herein provided until said payment is made; it being understood that all the rest,

residue and remainder of the said earnings and proceeds, after satisfaction of said semi-annual installment, shall be free for any legitimate use by said city; and it is further provided that if the said city fail to make payment for any six month's term as agreed herein for thirty days after the same is due, the said Water Company may take possession of the said works and operate the same and collect earnings from private consumers until all the unpaid installments be satisfied out of the same; and it is further provided and agreed that the city shall keep the said works in good condition and continue to serve its inhabitants and collect therefor substantially the same rates for water service as heretofore collected by the company for like services, until all of said indebtedness be paid.

"Section 3. That in payment of all present indebtedness, and part payment of the purchase of said waterworks system the city of Neosho shall pay the Neosho City Water Company the sum of twenty-five thousand dollars out of the proceeds of an issue of twenty-five thousand dollars of city bonds which are to be sold for not less than par value, said bonds to date March 23, 1899, be in denomination of five hundred dollars each, bearing interest at the rate of five per centum per annum from date, payable semiannually, with interest coupons attached to conform to the face of the bond, attested by the signature of the mayor of the city and the clerk thereof, and have affixed thereto the corporate seal of said city.

"Section 4. For the purpose of providing the means to pay the bonds provided for by this ordinance and interest thereon as the same falls due and accrues, there shall be levied and collected annually, in addition to the tax for ordinary purposes, a special tax of twenty-five cents on one hundred dollars valuation on all taxable property in the city; that said tax shall be separately levied and collected at the same time and

in the same manner as taxes are collected for general purposes, and when collected the same together with at least twenty per cent of the annual taxes levied for general purposes, which amount is hereby set apart and appropriated for such purpose, shall be and constitute a special fund for the specific purpose of paying interest on said bonds as the same become due and to constitute a sinking fund to pay the principal of said bonds as and when they mature, provided, however, that if there be raised and paid into such special and sinking fund for any year from license taxes, the ordinary revenue, or other sources, a sum equal to the said twenty-five cents on the one hundred dollars valuation of the taxable property, then the said special tax levy may be correspondingly lowered for such year.

"Section 5. That for the purpose of obtaining the assent of the legal voters of the city to this ordinance and the foregoing provisions thereof, a special election shall be held in the city of Neosho on the 7th day of March, 1899, at which said election this ordinance and proposition to authorize the said contract and to become indebted and to issue bonds for the payment of the indebtedness incurred and to levy annual taxes to pay the interest and principal of said bonds as above provided, shall be submitted to a vote of the qualified voters of the said city for ratification or rejection.

"Section 6. That all persons voting at said election in favor of said compromise contract and of this ordinance and of the increase of levy of the annual taxes and of incurring said indebtedness of twenty-five thousand dollars and of the issue of bonds for the payment thereof, all as above provided, shall deposit a written or printed ballot in the following form: For the ordinance and contract, the increase of debt, the issue of bonds and levy of taxes as proposed,—Yes.

"All persons voting at said election voting against the ratification of this ordinance, and of the increase

of levy of the annual taxes and of incurring said indebtedness, and issuing of bonds as herein provided, shall deposit a written or printed ballot in the following form: For the ordinance and contract, the increase of debt, the issue of bonds and levy of taxes as proposed,—No.

"Section 7. That the bonds mentioned in this ordinance shall be known as the Neosho Water Bonds and shall be numbered successively from one to fifty inclusive; said bonds shall be due and payable on the 23d day of March, 1919, but said city may at its option pay said bonds at any time after the 23d day of March, 1909.

"Section 8. At least fifteen days notice of said election shall be given prior to the date thereof by publication in some newspaper published in said city.

"Section 9. This ordinance shall be in force, for all purposes of notice and election and authority to execute its provision so far as practicable, from the day of its passage and approval, and thereafter effectual and in force in all other respects, only upon condition that two-thirds of the qualified voters of the city voting at the election held for that purpose vote in the affirmative upon the proposition hereby submitted, and the further preceding condition that the said Water Company shall file with the city clerk written acceptance of the terms of this ordinance, with authenticated resolution of board of directors of said company authorizing such acceptance, without which acceptance either before said election or within thirty days after the returns of said election shall have been canvassed and the results declared by the board; this ordinance shall have no further force or effect for any purpose; and it is further provided that upon the said two-thirds majority vote in the affirmative as above contemplated and the written acceptance hereof by the said Water Company as above required the said contract shall be

deemed as in full force without further formalities as of the date of January 1st, 1899.

"Section 10.   All ordinance and parts of ordinances and especially the provisions of the said ordinance No. 113, so far as the same are contrary to or inconsistent with the provisions of this ordinance are hereby repealed.

"Passed by the board of aldermen of the city of Neosho, Missouri, this 14th day of February, 1899.

"J. F. SHANNON, Mayor.

"Attest,

"J. B. Robinson, City Clerk.

"Approved by the mayor this 14th day of February, 1899.

"(City Seal).

"J. F. SHANNON, Mayor."

Ordinance No. 232 was formally accepted by the Neosho City Water Company; and presently the bonds contemplated thereby were executed, put on the market and sold at par ($25,000), plus a premium of $1,685, and passed into circulation.   Out of the proceeds $25,000 were paid to the Neosho City Water Company as provided in section 3 of said ordinance; and on the 24th of day of April, 1899, the following deed (omitting signatures and acknowledgment) was executed:

"Know all men by these presents, that the Neosho City Water Company, incorporated under the laws of Missouri, in pursuance of the terms of contract embodied in ordinance No. 232 of February 14th, 1899, of the city of Neosho, in Newton county, Missouri, and for the sum of twelve thousand and five hundred dollars paid concurrently herewith does now and hereby grant, bargain, sell, set over, assign and convey unto the said city of Neosho a perfect title in and to all and singular the entire plant and waterworks system of the said company as located in, at and near the said city,

203 Mo Sup—5

including all its lands, water springs, rights of way, pipe lines, pipes, hydrants, easements, franchises and all other property of every kind belonging thereto or used in connection therewith both real and personal with all the office books for use in connection with continuation of the service of water to private consumers or persons, the title to all which property, plant and works is now and hereby conveyed to the said city free and clear of all liens and encumbrances, a part of said lands being so much of the south half of the southeast quarter of section twelve, in township twenty-four of range thirty-two, and the south half of the southwest quarter of section seven in township twenty-four of range thirty-one in said county as the said company has heretofore exerted control over or asserted title to as a part of or appurtenant to the Elm Springs head or the company's reservoir site and pipe line connections excepting only water privileges of Rebecca McBee, L. B. McBee and Linnie McBee as now enjoyed by them.

"Witness the seal of the said company and the signature of its duly authorized officers, viz: Its acting president and secretary, its manager and agent, C. Basye, in pursuance of due resolution of the board of directors of the said company this 24th day of April, A. D. 1899."

On the execution of the foregoing deed, the Neosho City Water Company satisfied its judgments, dismissed its pending suits for accrued installments of hydrant rental, treated all past hydrant rental as paid off, and turned into the possession of the city all its properties and property rights covered by the ordinance and deed, and the city began the performance of the contractual duties, enumerated in ordinance 232, not theretofore performed. In that performance, it turned over to the Neosho Water Company the $875 semiannual installments provided for July 1, 1899, January

1, 1900, and July 1, 1900. On January 1, 1901, it defaulted in the performance of the contract and has continued to this day in default.

It seems from the very beginning the city did not keep the earnings of the waterworks plant arising from water service to private consumers separate from its general revenue, but brought them all into hotch-pot on its books and dissipated those earnings by paying them on current obligations of this or that sort. In this condition of things one Matters (and others) brought a proceeding by mandamus in the Newton Circuit Court in their capacity as tax-paying citizens of the city of Neosho and against the mayor, the treasurer and board of aldermen of that city, the object of which was to prevent a commingling of the earnings of the water plant with the general revenues of the city and the consumption of those earnings in the payment of current obligations, and to compel the city to set apart the earnings and revenues of the water service arising from its sale of water to private consumers to subserve the purposes of the ordinance No. 232. On return being made to that writ a trial was had and a final judgment entered awarding a peremptory writ of mandamus, which judgment remains in full life, undisturbed by appeal, and is as follows:

"Now on this day comes both the relators and the defendants herein, and thereupon the return of the said defendants to the writ of alternative mandamus heretofore issued and the plea and the traverse of said relators to said return, are submitted to the court for trial, and the court having heard the evidence doth find the issues formed in favor of said relators, and that said defendants have not shown any just cause why a peremptory writ of mandamus shall not issue to them, the said defendants, as prayed by said relators, and that the said defendants have made a false return to said writ. Whereupon it is by the court con-

sidered and adjudged that a writ of peremptory mandamus be issued to the said defendants, to-wit: Chas. E. Prettyman, mayor, and W. C. Price, treasurer, of the city of Neosho, and J. Pickens, R. L. Wills, R. H. Robinson, W. E. Sims, J. S. Rowe and Frank Taiclet comprising the board of aldermen of said city and to each of them, directing them and each of them as such officers of said city to set apart and keep on hand in the city treasury of said city at least $875 each six months out of the earnings arising from water service to private consumers, as collected by said city for each and every year inclusive of the year 1903, unless the semiannual payments of $875 each be paid to said Water Company as and when such payments become due. And that said relators have and recover their costs and charges in this behalf expended and have thereof execution.''

On the aforesaid judgment being entered, the city fully complied with the same to the letter, and went further and took out of its general revenues and set aside enough money to cover all semiannual installments in default prior to 1903. It seems that during the term of these defaults the income from the waterworks had been more than sufficient to meet the installments aforesaid; and as this income had been used for current city expenses, the general revenues were drawn upon to restore enough to meet those installments, with interest. The fund thus segregated was designated by appropriate title as a special fund, and, at the time of the trial below, was intact and sufficient to meet all installments in default.

By assignments and transfers (questioned in matters of form by defendants, but on examination found by us to be sufficient in form) the Neosho City Water Company transferred its claims and rights under ordinance 232 to the Michigan Pipe Line Company, to which company it seems to have been indebted through

Saleno for material used in constructing the water-works, and the Michigan Pipe Line Company there-after transferred its rights under the foregoing trans-fer and assignment to the plaintiff; and thereupon the plaintiff instituted the suit at bar.

The alternative writ of mandamus in the case at bar narrates certain of the foregoing facts; and the defendant Prettyman made return in which he admitted the narrations of fact in the alternative writ and consented that a peremptory writ go. The other defendants made return in substance and effect denying the validity of the contract evidenced by ordinance No. 232. The theory of this return is that by ordinance 232 a debt of $46,000 was created against the city, to-wit, $25,000 in bonds and $21,000 to be paid off by twenty-four semiannual payments of $875 each. Defendants allege that this alleged debt of $46,000 was in excess of the limits imposed by section 12 of article 10 of the Constitution. And they further say that in so far as said ordinance created a debt of $21,000 to be paid in semiannual installments, the indebtedness is void because at the time or before the time of its creation there was no provision for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and to constitute a sinking fund for the payment of the principal thereof, as demanded by that section of the Constitution.

The averments of the return were sufficient to raise said two defenses, and issue (as said) was joined by a reply. At the trial there was no proof of any provision for a tax levy to meet the interest on the semiannual installments, or to create a sinking fund to pay the principal; and the proof relating to the amount of taxable property in Neosho was such that if we adopt the theory that the semiannual installments provided for by ordinance No. 232, constitute a debt within the purview of the Constitution, then, when added to

the $25,000 of bonded indebtedness, the total indebtedness was beyond the constitutional limit of five per centum on the value of taxable property, ascertained by the assessment next before the last assessment for State and county purposes previous to the incurring of such indebtedness. The judgment sets forth certain findings of fact, and a peremptory writ of mandamus was ordered to issue in the following terms:

. "Now, therefore, we being willing that your duties as such mayor and board of aldermen of said city be fully performed, and that complete justice be done in the premises, it is by the court considered and adjudged that the writ of peremptory mandamus be issued to the said defendants, mayor and board of aldermen of said city, to-wit: J. W. Lamson, mayor, R. L. Wills, Ed Rathell, R. H. Robinson, E. E. Carnes, F. T. Taiclet and J. S. Rowe, composing the board of aldermen of said city, and to each of them, directing that they issue forthwith and cause to be delivered for payment to the said relator, Henry B. Smith, in due and lawful form warrants or orders upon the treasurer of said city, passed and ordered by you in due form on and requiring payment out of, the particular and special waterworks earnings and fund aforesaid in the sum of $2,625, being the amount of said two semiannual payments for 1903 and first semiannual payment for 1904, and that hereafter you and your successors in office at your first meeting after the 1st days of January and July on the request or demand of the relator or whenever so demanded by him after so becoming due issue and deliver to him a like warrant or order for the sum of $875 on said fund for the respective semi-annual payments hereafter to become due until the expiration of said contract.

"And that relator have and recover his costs and charges in this behalf expended and have execution therefor."

It will be seen (as said) that the peremptory writ lays no command upon the city authorities to issue warrants for the installments provided for in the years 1901 and 1902; and on this account plaintiff appeals and complains; whereas defendants complain that warrants covering the installments to be turned over in 1903 and subsequent years were ordered to issue; and on this account they appeal.

I. There is a general (but somewhat surface) view to this case; for instance, the finger can be put upon many advantages to the city of Neosho springing from the compromise evidenced by ordinance 232. Thus, it bought peace. Then, subject to a reservation, it acquired the waterworks system and with that the right of way for pipe lines outside the city, the reservoir of the water company and its property right in the Elm Spring,—i. e., the water supply of the town. So, too, it relieved itself from the menace of existing judgments for accrued hydrants rentals and other judgments impending and about to fall upon it. These judgments were a charge upon, and, therefore, a wearing, depleting drainage on its general revenues, sapping its municipal health and hamstringing its municipal vigor. Again, it relieved itself from the payment of $3,050 per annum for the eleven or twelve years remaining of the Saleno term under ordinance 113. Moreover, the installments provided by ordinance 232 would (presumably) take care of themselves out of a portion of the income arising from the sale of water to private consumers, leaving the city the free use of water for fires and to clean its streets and flush its sewers, for its schools and public offices, baths and drinking fountains, and providing a fairly sure increase in its revenue from the surplus from the sale of water to private consumers, increasing from year to year as the city grew and the plant developed.

There is another phase to a general view; for in-

stance, in so far as the city of Neosho seemingly is
made to tightly grasp with one hand (a mailed hand)
the benefits of the contract in question and at one and
the same time is made to lightly put away from it with
the other hand (an inconstant and nerveless hand) the
burdens of that contract, it, wittingly or otherwise, is
made to play a role not bespeaking judicial sanction,
unless that sanction be coerced by the imperious voice
of the Constitution itself.

But, if we are to deal comprehensively with the
subject, at the very outset it must not be forgotten that
those who dealt with Neosho did so with their eyes open
to any infirmity in the power of that city to contract.
Further, it must be assumed that we may not be con-
trolled in our exposition of the Constitution by the mere
advantages to accrue to Neosho, nor by the mere senti-
mental ethics of the situation. It is enough for us to
know that ours is a government by written constitutions
and that the Constitution of this State puts an im-
passable limit upon the power of municipalities to be-
come indebted. That Constitution was framed by plain
men. Its language is plain, its purpose is plain; and
the duty of this court, as of every court, is not to sub-
ject its words to any over-nice or extraordinary gloss,
but to hew to the line in its exposition, letting the chips
fall where they will—our duty is to make such con-
struction as, in the language of Maxwell (Maxwell,
Interp. Stat., 133-4) "shall suppress all evasions for
the continuance of the mischief." "To carry out ef-
fectually the object of the statute," says the author,
"it must be so construed as to defeat all attempts to
do or avoid in an indirect or circuitous manner that
which it has prohibited or enjoined. . . . When
the acts of the parties are adopted for the purpose of
effecting a thing which is prohibited, and the thing
prohibited is in consequence effected, the parties have
done that which they have purposely caused, though

they may have done it indirectly.  When the thing done is substantially that which was prohibited, it falls within the act, simply because, according to the true construction of the statute, it is the thing thereby prohibited.''  The reasoning of State ex rel. Columbia v. Wilder, 197 Mo. 1, accords with the foregoing.

The Supreme Court of Indiana, in Voss v. Waterloo Water Co., 163 Ind. l. c. 90, quotes with approval the foregoing, and adds language to be unreservedly commended, viz.: ''It is not material whether or not there was any fraud on the part of any one, nor does the necessity for said water and light plant make any difference, if by said arrangement the town became indebted within the meaning of our Constitution.  The language of article 13 of the Constitution is plain and simple, and its meaning unmistakable.  The incurring of indebtedness beyond the amount limited is absolutely and unqualifiedly prohibited, no matter what the necessity, pretext, or circumstances may be, except those provided for in said article, or the form which the indebtedness is made to assume.  It binds the courts, curbs the power of the Legislature, the officials, and the people themselves, and was intended to protect the taxpayers by confining the indebtedness of a municipal corporation within a prescribed limit.''

In Browne v. City of Boston, 179 Mass. l. c. 324, MORTON, J., said for that court: ''The manner in which the indebtedness is sought to be created is immaterial if the result is to subject the city to a present liability direct or indirect which the taxpayers will eventually be called on to meet.''

And as pointed out by defendants' learned counsel, the admonition in the words of Justice MILLER in Litchfield v. Ballou, 114 U. S. l. c. 192-3, in commenting upon a provision (similar to ours) in the Constitution of Illinois, should be heeded, viz.: ''It [the city] shall not *become indebted.*  Shall not incur any pecuniary liabil-

ity. It shall not do this in *any manner*. Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any *purpose*. No matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner, or for any purpose whatever. If this prohibition is worth anything it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law.''

The constitutional language under exposition by Justice MILLER in Litchfield v. Ballou, is not a whit stronger or plainer than the language of our own Constitution in section 12 of article 10, reading that: "No county, city, town . . . shall be allowed to become indebted *in any manner* or for any *purpose* to . . . an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained," *etc.*

Now, in this case, it must be admitted that the $25,000 evidenced by bonds were an indebtedness. It matters not to what use the proceeds of those bonds were put. Whether they were used to buy useful property or to pay valid debts, or both (as they were) the bonds themselves constitute an indebtedness of the city of Neosho in the amount of their face. It was shown, *nisi*, that the taxable wealth of the city of Neosho according to the proper assessment would not support more than, say, $30,000 of constitutional indebtedness. Therefore, unless we are to palter with the situation, it must be held that if the $21,000 to be turned over in semiannual installments to the water company be also a debt of the city, then, by that holding, such debt was born under the gall and wormwood of a constitutional malediction and is dead in trespass and in sin.

Furthermore, although in oral argument by defendants' learned counsel and in their briefs it was suggested that the city of Neosho does not doubt or attack the validity of the bond issue, yet we are reminded that, as in olden time a new king arose who knew not Joseph, so, in the capricious vicissitudes of municipal politics, a new city administration may arise and govern Neosho that may take and hold a sinister view of the validity of these same bonds. It may be said here and now that the validity of a debt does not depend on the momentary whim (*i. e.,* the mere ambulatory or saltatory views) of the debtor. Looking to the record, it is apparent that both bonds and semiannual installments are provided by the same contract, the same ordinance—the breath of life is breathed into them by one act. They further but one, and that a common, purpose. The compromise contract cannot be split into parts, some to be taken and others left, inasmuch as the scheme is indivisible and its parts interdependent. This being so, under the doctrine of Thornburg v. School District, 175 Mo. 12, courts may not pick and choose between the bonds and the installments, judicial power may not scale the indebtedness down to a constitutional limit, and, hence, the whole body of it would be undermined and liable to be thrown down by a decision establishing the invalidity of a portion of that debt—provided, it *is* a debt.

II. What is a debt? BURGESS, J., in Saleno v. City of Neosho, *supra,* says: "A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed, and which cannot ripen into a debt until performed." Sometimes the word "debt" is used with a very wide import. When so used in a general or popular sense it may be said to be that which is due from one person to another,

whether money, goods, or services; that which one person is bound to pay or perform to another. But "debt" within a constitutional purview has no such wide play in meaning. On the contrary, "debt" in the sense the words "indebted" and "indebtedness" are used in the Constitution, must be restricted to mean a promise by the municipality, grounded in a valid consideration, to pay to some person a sum of money now due and payable, or to become due and payable at a future day—an obligation resting on the debtor to pay with a correlative right in the creditor to enforce payment.

In the exposition of the matter in hand (the case calling for it) we may first profitably attend to certain rules for construing contracts. For example: Says Bishop (Bish. Cont. [En. Ed.], sec. 380), "The rule most conspicuous and wide-reaching of all is, that a written contract shall be so interpreted as, if possible, to carry out what the parties meant." Says Lord Coke: "Whenever the words of a deed, or of the parties without a deed, may have a double intendment, and the one standeth with law and right, and the other is wrongful and against law, the intendment that standeth with law shall be taken." [Co. Litt. 42.] Says Jones (Jones on Const. Cont., sec. 223): "And it is said to be a well-settled rule in the interpretation of contracts, that when a clause is capable of two significations, it should be understood in that sense which will have some operation rather than in that in which it will have none." Sec. 224: "Under the foregoing rule, therefore, a contract which admits of both a legal and an illegal interpretation will be construed in its lawful sense, and the presumption is that the parties act in conformity to law." Says Beach (1 Beach, Cont., sec. 717): "Where a contract is fairly open to two constructions, by one of which it would be lawful and by the other unlawful, the former must be adopted. The presumption is in favor of the legality of contracts. The law does not

assume an intention to violate the law, nor will an agreement be indulged to be illegal where it is capable of a construction which will uphold it and make it valid.''·

Apropos to the subject are the words of Lord HOBART, Lord Chief Justice of the Court of Common Pleas in 1614. Chancellor Kent speaks of him as ''a very great lawyer,'' and Jenkins as one who has ''furnished surprising light to the professors of law.'' Referring to the need of judicial astuteness in the searching out of the very marrow of a transaction to get at the true intent of parties to a contract, Lord HOBART in Pits v. James (Hobart's Reports, l. c. *125a and *125b), says: ''And Ecclesiasticus . . . speaks of this elegantly, thus: 'There is a subtilty that is fine, but it is unrighteous, and there is that wresteth the open and manifest law; yet there is also that is wise and judgeth righteously.' '' Thereon he comments shrewdly and quaintly, as follows: ''So he makes three degrees; some impudent to give false judgment grossly; some others·as wicked, yet do it more cunningly under pretense of strains of law. But a man may be as wise and fine to justice as any others to fraud; and so I commend the judge that seems fine and ingenious, so it tend to right and equity; . . . and I condemn them that either out of pleasure to shew a subtle wit, will destroy, or out of incuriousness or negligence will not labor to support, the act of the party by the art or act of the law.'' And again, in Clanrickard et ux. v. Sidney (Ibid. *277b), the same great judge says : ''And here, first, I do exceedingly commend the judges that are curious and almost subtile, astuti (which is the word used in the Proverbs of Solomon in a good sense, when it is to a good end) to invent reasons and means to make acts according to the just intendment of the parties, and to avoid wrong and injury, which by rigid rules might be wrought out of the act.''

In light of the foregoing generalizations, we must, in determining whether the semiannual installments aggregating $21,000 constitute an indebtedness to that amount, look about us a little and interpret the contract by animating its cold words (and sweetening its sour ones) by the purpose to be subserved by the contracting parties, by their intentions, if they can be got at, and by the whole environment. In the exposition of this matter we may assume that both parties to this compromise were of one mind in honesty of purpose, that neither the one nor the other intended to violate the Constitution, and that neither party was *inops concilii*. To the contrary, both parties had the advantage of acting under the advice and supervision of counsel armed with militant dispositions and legal learning ample to keep their clients in the main-traveled road of constitutional law. Indeed, if every man is presumed to know the law, and if that formula is ever to be applied, then, *a fortiori*, may it be rigorously applied to the parties in this case. And this is so because the persistent and multiform litigation forerunning the compromise must be allowed value as an educational factor; since thereby both litigants and counsel were made alive to the delicacy of the situation and to the constitutional limitations upon the contractual power of cities of the fourth class.

It may be said, then, that all parties approached the compromise forewarned of those constitutional limitations and awake to the lurking dangers besetting the subject-matter. In this view of the case it is incomprehensible that either the city of Neosho or its counsel, or the Neosho City Water Company, or its counsel, could have had any intention to make the $21,000 (represented by installments) a subsisting indebtedness of the city; for if we adopt that notion it would be the same as to say that either a wilful violation of the Constitution was intended, or that one party or the other was

dealing with Punic faith in the compromise—*i. e.*, while ostensibly burying the hatchet, it was buried *with the handle up for future war.*

In the light of the foregoing, the question in hand may be put in a different form—thus: Did the parties to this compromise, in spite of themselves, so frame their contract that, in seeking to avoid the pitfall they knew existed, they fell into it? Let us see about that.

III.   Ordinance 232 refers to the deed in evidence, to the former ordinance 113, to past litigation and existing judgments, as well as to a present liability for hydrant rentals, and finally refers to itself "as a final compromise contract." We are invited then, by the ordinance, to read the deed, the two ordinances, the judgments and the story of the litigation and the scope and intendment of the compromise into the contract evidenced by ordinance 232; and we are invited by the law to approach the exposition of that contract in the light of the assumptions that the parties knew the law, intended no evasion of the law and were dealing honorably with each other for the purposes set forth in the contract, to-wit, not only of a compromise, but "for the securing of a better fire protection and water service for the said city of Neosho."

It must be admitted that Ordinance 232 is unhappily worded; and that if we alone consider the deed of conveyance and certain detached phraseology in the ordinance and spell out the contract by a close construction of that deed and that phraseology, it would appear that the Neosho City Water Company, for the sum of $46,000, $25,000 paid in hand and the balance to be paid as a debt in equal semiannual installments covering twelve years, sold its properties to the city of Neosho, released all its prior indebtedness against the same, and stepped down and out—that city thereby becoming not only the absolute owner of its waterworks, its rights of way, its franchises, its source of water supply, but be-

coming the owner of the absolute title to the revenues and income therefrom as well.

But ordinance 232 may (and to my mind should) be approached from another standpoint. There is language in that ordinance showing the foregoing view not to be within the intendment of the contracting parties. To my mind that intendment (and therefore the contract itself) as gathered from its four corners and in the light of all the circumstances of the case, must be held to be the same as if the ordinance had said, in substance: "Whereas, the city of Neosho and the water company estimate the properties and assets of said company (consisting of real property, franchises and easements, as well as of judgments and accrued installments of hydrant rental due from the city) as worth $46,000; and, whereas, the city and said company have been for seven years in continuous litigation and disagreement and the city is willing to buy said works and pay said judgments, and the company is willing to sell; and, whereas, the city of Neosho is willing to issue $25,000 in bonds and pay that sum out of the proceeds on said judgments and on said property; and, whereas, the said city under the Constitution cannot become indebted, beyond the amount of the bonds provided for herein; and, whereas, the water company recognizes the inability of the city to become indebted, either by express or implied agreement, and is willing by way of accord and compromise to satisfy the said debts and sell its said properties to the city on that theory, reserving to itself no lien or incumbrance on the works proper, or any fixtures thereto appertaining but reserving to itself only so much of the usufruct of said waterworks for twelve years as will equal the sum of $21,000 (no reservation for any period of six months to exceed $875); and, whereas, the city is willing to buy on those terms and thereafter keep said works in good condition, provided it does not become indebted to the

water company for any portion of said $21,000 so reserved, and provided it is put in immediate possession of the plant, with power to control and develop the same and with the power and duty of maintaining the water charges now existing and acting in the capacity of a collector for the water company and as custodian of so much of the charges paid by the consumers as will amount to the aforesaid installments so as aforesaid reserved—the same to be turned over to the water company semiannually, therefore, this compromise is made on the foregoing basis—the city to own the rest and residue of the income of the works from paid water service, and the water company to at once make a deed of conveyance with full assurances of title and at once satisfy all its judgments against the city and give an acquittance for all liability for hydrant rentals under ordinance 113. It is hereby expressly agreed that the city is not bound, directly or indirectly, for the payment of said $21,000—that is, the said installments shall not become a charge upon the general revenues of the city, but the water company must look alone to the revenue from paid water service for said installments; and the city accepts the foregoing reservation of portions of the income from paid water service, assumes the duty of collecting, conserving and turning over said reserved part of the income, provided, further, that if the city default as trustee for the water company in the maintenance, collection, conservation and turning over of said semiannual installments, the water company, for the purpose of gathering said installments, may temporarily, from time to time, retake possession of the works and collect enough of the earnings to satisfy defaulted installments. But if it retake possession of the works at any time for such purpose it shall keep the same in good condition and (barring the retention of any installment in default)

shall operate the same during such time or times for the benefit of the works and city under the terms of ordinance 232.''

The underlying purpose of the constitutional prohibition of an indebtedness beyond five per centum of the taxable wealth of a city was to serve as a limit to taxation—as a protection to tax payers. If, therefore, there was no debt contracted for the $21,000, then the citizens of Neosho are accorded the full protection of the Constitution, and the interdiction of section 12 of article 10, *supra,* does not apply. The contract in question provides for the creation of a special and particular fund without resorting to the power of public taxation; and the waterworks company and Smith, its assignee, may look alone to that fund in the first instance —what might happen if the city tortiously misappropriated and dissipated that fund, we need not inquire. Such acts might (or might not) render the city liable as for a tort; and the liability for torts is not one within the constitutional provision under consideration. [Conner v. City of Nevada, 188 Mo. 148.] But that question is not here, and, therefore, is not decided.

Some of the words of the ordinance create an ambiguity and resolving all doubts in favor of the validity of the contract, as we are bound to do, we hold that the $21,000 to be turned over semiannually do not constitute a debt within the purview of the State Constitution. We think a generous and fair interpretation of the contract leads to that conclusion; and we are encouraged in that view by the omission from the ordinance of any provision for a tax to pay the interest on said installments and the omission of any provision for levying a tax to create a sinking fund to discharge the principal. Defendants' learned counsel argue that the omission of such provisions renders the indebtedness void, but to our minds such omission tends to show the existence of no debt whatever; and when we consider

that the contracting parties were dealing with each other with full and present knowledge of the constitutional prohibition against such indebtedness, the conclusion must be that they did not intend an indebtedness, and it would be doing violence to the intendment of the parties to make an indebtedness out of it.

The law may be said to be a body of rules primarily intended to prevent litigation; but, if litigation ensues, then these same rules are lamps to guide judicial feet to the goal of justice and to get at the very right of the thing in dispute. Hence it is that the law looks with concern on the beginning of litigation and grants its benediction on its close. A compromise, therefore, is much favored in the law as in the nature of a treaty of peace; and a court will never disturb an amicable settlement if it can be sustained without overturning settled rules of law. In this case we are driven to no such hard necessity; for in view of what has been said the contract is valid and (as interpreted) does not create an indebtedness within the reasoning of many cases expounding constitutional provisions somewhat similar to our own. [Winston v. Spokane, 12 Wash. 524; Donahue v. Morgan, 24 Colo. l. c. 398, et seq; Faulkner v. Seattle, 19 Wash. 320; Ft. Dodge Electric Light & Power Co. v. Ft. Dodge, 115 Iowa 568; Swanson v. Ottumwa, 118 Iowa 161; City of Laporte v. Gamewell Fire Alarm Telegraph Co., 146 Ind. 466; Brockenbrough v. Board of Water Commissioners of Charlotte, 134 N. C. 1; Adams v. City of Ashland, 80 S. W. 1105; Stone v. Chicago, 207 Ill. 492; Gedge v. Covington, 80 S. W. 1160.] The principle decided in the foregoing cases may be said to rest somewhat on the same reasoning employed by this court in sustaining levee bonds to be paid out of benefits accrued. [Morrison v. Morey, 146 Mo. 543; see, also, Kansas City v. Bacon, 147 Mo. 259.

IV. There are business and proprietary powers

inherent in a city of the fourth class to be exercised through its board of aldermen as distinguished from legislative and governmental powers to be similarly exercised. In so far as such city is exercising ministerial and business functions and dealing with property rights, it is as much within the control of courts as private individuals are, and may be compelled to act or desist from action as the courts direct. When a city is exercising purely governmental or legislative powers, it is not so clear that it may be compelled to do and perform, or prohibited from doing and performing. [State ex rel. v. Gates, 190 Mo. l. c. 558, et seq., and cases cited.]

Plaintiff's counsel, in a supplemental brief, filed January 22, 1907, cite us to many cases illustrating under what circumstances a municipality may take and hold private property and execute imposed trusts, and become responsible precisely as a private individual under similar circumstances, but this phase of the case need not be further developed.

Here a fund has been accumulated from paid water-service, that does not belong to the city, though in its chest. In part it was segregated and accumulated by force of a judgment in the Matters' mandamus suit. In part it was accumulated by the voluntary act of the city in undoing the wrong it had done—by the dissipation of that fund for 1901 and 1902, in that, when its duty to preserve the fund was pointed out by the judgment of the court in the Matters' case, it voluntarily (and honorably) restored the integrity of the fund for those years. This case is submitted to us on a record showing the fund intact in the city treasury; and, as it belongs to the plaintiff, and as the city holds it as trustee for plaintiff, it ought to turn it over to its owner; and a convenient and practical way to compel the performance of its duty in that behalf is by a peremp-

tory writ of mandamus requiring warrants to be issued in due form against the fund.

There are other questions discussed by counsel which we deem not vital to a just disposition of the case, and, therefore, they are put to one side.

There was error, *nisi,* in not granting plaintiff the full relief prayed. The alternative writ of mandamus required defendants to show cause why relief should not be granted by issuing warrants for the installments of January 1, 1901, and every six months thereafter. Defendants failed to show good cause, and, therefore, this cause is reversed and remanded with directions to the lower court to enter judgment in favor of plaintiff, making the alternative writ peremptory and final—defendants to pay all costs, including costs of this appeal.

*Gantt, C. J., Burgess, J.,* and *Graves, J.,* concur; *Valliant, J.,* concurs in the result; *Woodson, J.,* dissents, and expresses his views in a separate opinion in which *Fox, J.,* concurs.

### DISSENTING OPINION.

WOODSON J.—This is a mandamus proceeding instituted in the circuit court of Newton county to compel the mayor and board of aldermen of the city of Neosho to pay over to the relator certain funds in the treasury of the city collected as water rentals under and by virtue of City Ordinances Nos. 113 and 232 of the said city of Neosho.

There is but little controversy as to the facts, and they are substantially as follows:

Neosho is a city of the fourth class, and said city by said ordinance No. 113 granted a franchise to one S. V. Saleno to construct and operate a system of waterworks in said city, and contracted for water to be furnished to the city and its inhabitants, and agreed to

pay. an annual water rental of two thousand dollars for the first fifty hydrants erected by Saleno, and for all in excess of that number an additional rental of thirty dollars each, all of which in this case amounted to $3,050 a year, and to be paid in semiannual installments of $1,525 each on the first days of January and July of each year for a period of twenty years, and fixed a schedule of prices to be charged the inhabitants of the city for the water used by them. This ordinance has been before this court upon two former occasions; on each it was held valid and binding on the city.

After many years of litigation the water rentals, interest and costs amounted to an indebtedness aggregating $25,000 or $26,000, with no money in the treasury of the city to pay it. In order to meet that condition of affairs, the city of Neosho, on February 14, 1899, duly enacted by its mayor and board of aldermen Ordinance No. 232, which is as follows:

"ORDINANCE No. 232.

"An ordinance to provide for the compromise of all matters of difference between the city of Neosho and the Neosho City Water Company arising out of the contract ordinance of the 22nd day of September, 1890, numbered 113; and for the city of Neosho purchasing, taking over and operating the waterworks constructed under said ordinance; and for the satisfaction of the judgments and hydrant rental claims against the said city of Neosho in favor of said Neosho City Water Company; and for the securing a better fire protection and water service for the said city of Neosho and selling water to its inhabitants; and for the issue of twenty-five thousand dollars of interest-bearing ten— twenty (years) city bonds, and the levy of a tax for a sinking fund to pay the same and for securing to the said Neosho City Water Company semiannual installment payments, for twelve years, of eight hundred

and seventy-five dollars each, for use of waterworks as a compromise measure; and for the repeal of said ordinance No. 113 so far as inconsistent with this ordinance.

"Be it ordained by the board of aldermen of the city of Neosho as follows:

"Section 1.    That, with the assent of the voters of said city, by a two-thirds affirmative majority vote, at the time hereinafter provided, the following contract is hereby authorized to be made, and the same may be accordingly certified by the mayor and clerk and authenticated by the seal of the city of Neosho, Missouri, as a final compromise contract with the Neosho City Water Company, as assignee of S. V. Saleno, viz: This contract is made in full compromise and settlement of all and every judgment, claim and demand against said city under ordinance No. 113, and it is agreed as follows:

"The Neosho City Water Company, as assignee of said S. V. Saleno, agrees to transfer, by proper legal conveyance, the title, possession and use of the entire system of waterworks, land, water springs, pipe lines, pipes, right of way, easements, franchises, hydrant, and all other property thereto belonging or used in operating the same, free and clear of any charge or incumbrance, to the city of Neosho with the right to the city to operate and control the same, collect all rent or toll for supplying water to all persons whatsoever, and have and use, subject to the reservation hereinafter mentioned, all the proceeds and hydrant rental of said plant for a period of twelve years from January 1, 1899, *and release the city from all hydrant rental* and liability relating to the same under the provisions of said ordinance No. 113, *except as herein expressly provided,* and in consideration thereof the city agrees to pay for the use, control and possession of said works the sum of $875 every six months, on or before the first

day of July and first day of January of each year for a period of twelve years, from January 1, 1899; and in consideration of said payments and the payment of twenty-five thousand dollars for judgments and in full settlement of all claims and differences existing between said parties as in this ordinance provided, it is agreed and contracted that the city shall own said works absolutely, and it is further agreed that the Neosho City Water Company, as the legal assignee of said S. V. Saleno, shall on the day the twenty-five thousand dollars is paid to said company as herein provided, make out, execute and deliver a deed and conveyance in due and legal form, assigning, setting over and conveying to said city the entire plant and waterworks system, including land, water springs, right of way, pipe lines, pipes, hydrant, easements, franchises, and all other property of every kind belonging thereto, or used in connection therewith, both real and personal, with all the office books for the use in continuing the service of water to private persons, free of all liens, charges and incumbrances, and will give a perfect title to the same to the city of Neosho.

"On the payment of the said sum of twenty-five thousand dollars by said city to said Neosho Water Company, all judgments and other indebtedness, *except as herein provided,* in favor of said Water Company and against said city shall be deemed fully paid and discharged, and said Water Company shall cause to be entered on the proper court records formal satisfaction of each and every such judgment, and all suits of whatever nature now pending between said parties shall be dismissed, each party paying its own costs.

"Section 2. It is provided, however, that there shall be reserved to the said company for additional security for the payment of said sum of eight hundred and seventy-five dollars semiannually the following

rights, viz: *All earnings, proceeds and revenues arising from water service to private consumers for each and every successive period of six months during the continuance of the contract hereby authorized, to-wit*, *twelve years, shall* not be used for any other purpose than to pay the semiannual installment of eight hundred and seventy-five dollars for such term for the use of the waterworks as herein provided until said payment is made (aggregating $21,000); it being understood that all the rest, residue and remainder of the said earnings and proceeds, after satisfaction of said semiannual installment shall be free for any legitimate use by said city; and it is further provided that if the said city fail to make payment for any six months term as agreed herein for thirty days after the same is due, the said Water Company may take possession of the said works and operate the same *and collect earnings from private consumers until all the unpaid installments be satisfied out of the same;* and it is further provided and agreed that the city shall keep the said works in good condition and continue to serve its inhabitants and collect therefor substantially the same rates for water service as heretofore collected by the company for like services, until all of said indebtedness is paid."

Section 3 of said ordinance provides for the issue and sale of twenty-five thousand dollars in bonds and the payment of that amount to the Neosho Water Company "in payment of all present indebtedness and part payment of the purchase price of said waterworks system."

Section 4 of said ordinance provides for the levy and collection of an annual tax to constitute a sinking fund to pay the twenty-five thousand dollars in bonds.

Sections 5, 6, and 7 of said ordinance provide for its submission to the voters of the city for ratification.

Which ordinance was duly accepted by the Water Company.

This ordinance was not ratified by a two-thirds vote of the qualified voters of the city; at least the record is silent as to whether an election was held for such purpose, or what its result was.

No provison was made by the city at the time of or before the enactment of said ordinance for the levy and collection of an annual tax to pay the interest and to constitute a sinking fund to pay the principal of the twenty-one thousand dollars payable in semiannual installments, in twenty years; although such a provision was made for the payment of the bonds, but in lieu of the constitutional provision for a sinking fund the parties substituted a mortgage or pledge upon the receipts of the water system.

The city sold the bonds provided for under said ordinance, paid over to the Neosho City Water Company the proceeds (twenty-five thousand dollars), and said Water Company executed and delivered to the city a warranty deed, dated April 24, 1899, conveying to the city by the covenants of grant, bargain and sell its entire water system, lands, pipe lines, hydrants, etc., free and clear of any and all encumbrances. The Water Company's judgments against the city were paid and satisfaction entered, pending suits were dismissed and costs paid, etc. The city took title and possession of said waterworks under said conveyance and has maintained and operated the same ever since. The city paid three semiannual payments of $875 each, the two for 1899 and first one for 1890 (due July 1) and then defaulted.

In 1903 W. T. Matters and other citizens and taxpayers of the city brought a mandamus proceeding in the name of the State at the relation of a taxpayer, requiring the mayor and board of aldermen to segregate, set apart and reserve the water rentals for each six

months in a sum equal to $875, to be applied in the payment of the Water Company's interest in said rentals as reserved by the contract and Ordinance No. 232. Some of the city's officers returned that they stood ready to so apply the water rentals, and others denied the validity of the contract on various grounds, among others, that the contract was in violation of section 12 of article 10 of the Constitution.

The case was tried and the evidence tending to show the assessed valuation for the year 1899, and prior years, was introduced in evidence, as well as the ordinance and other testimony; and the court, after hearing the evidence, rendered judgment for the plaintiff, directed the issue of a peremptory writ of mandamus requiring the city authorities to set apart from the water rentals the sum of $875 on the first days of January and July of each year for the payment to the Water Company of its rental under the terms of said contract, and requiring the city not to use the water rentals until such sums were paid. This judgment remains in full force and effect.

And the evidence tended to show the Water Company in the meantime assigned its rights to the Michigan Pipe Line Company, and that company assigned its rights to the relator, Henry B. Smith. In the meantime the city authorities restored to the fund arising from water rentals a sufficient sum to pay off and discharge the rentals due the Water Company, and has ever since set apart sufficient of the water rentals for that purpose in obedience to the peremptory writ of mandamus so issued by the circuit court, and there was in the treasury at the time, set apart under this judgment and order of the circuit court, sufficient funds to pay off and discharge all the water rentals due this relator.

Respondents introduced evidence tending to show the assessed valuation of the year 1899 and prior thereto was not introduced in evidence in the case of Matters

et al. against the city in the mandamus proceedings; that the relator was not the assignee of the Michigan Pipe Line Company; that the expenses paid by the city for the repairs and operation of the waterworks were more than the total income derived therefrom; that the money set aside as water rentals was, in fact, taken from the general revenue of the city; and that the assessed valuation of the city was $603,860, as shown by the last previous assessment prior to the date of Ordinance No. 232.

The court, after hearing the testimony, rendered judgment for plaintiffs, directing a peremptory writ of mandamus to be issued, requiring the city to pay over to the relator all hydrant rental which was collected after the institution of the first mandamus proceedings and requiring future rentals to be segregated and paid over to relator.

Both the relator and respondents objected to the findings and judgment of the court, and in due time they filed their motions for a new trial and in arrest, which were by the court overruled, and they have duly prosecuted their joint appeal to this court.

I. The position of the relator is that Ordinance No. 232 is an amendatory ordinance to No. 113 and that the former repeals the latter in so far only as they are inconsistent with each other; that the deed executed by the Water Company to the city of Neosho must be read in connection with the contract and ordinance upon which the same is based, and that when so read the contract and ordinance create a reservation in favor of the Water Company for the portion of the water rentals received from water consumers as was set apart and segregated by the city in pursuance of the mandamus proceedings instituted by W. T. Matters; that the rentals, $875, every six months reserved by the Water Company under the compromise contract and ordinance are not a debt within the meaning of the Consti-

tution, and, therefore not in violation of section 12 of article 10 thereof; that the compromise contract has been adjudged valid by the circuit court of Barton county in the mandamus cause above mentioned.

Relator also contends that should the court conclude that said contract required the city to pay the Water Company the semiannual installments out of the general revenue and that such contract constitutes a debt within the meaning of the Constitution, then that part of the contract in relation to paying out of the water rentals is binding, and the other clauses may be rejected, as the means of payment provided for by the two clauses are independent of each other.

The contention of the respondents is that the contract upon which relator's claim is based is void as being in violation of section 12 of article 10 of the Constitution, because creating a debt in excess of five per cent of the assessed valuation of the city property as shown by the assessment next before the last previous assessment thereof; that the ordinance in question created an indebtedness to the amount of $46,000, while the assessed valuation of the city was only $603,860, so that the debt exceeded by $15,807 the five per cent limitation provided for by the Constitution. And also void because no provision was made for the levy and collection of an annual tax sufficient to pay the interest as it fell due and to constitute a sinking fund for the payment of the principal.

The statement of the facts and the position of the parties have been taken largely from the well and carefully prepared briefs of the able counsel in this cause. But in the view we have taken of the case it will not be necessary to pass upon all the questions presented by them.

At the threshold of this case, the question presented for our consideration is the character of the obligation of the city of Neosho to the Water Company re-

garding the $46,000 mentioned in Ordinance No. 232. That $46,000 was the purchase price promised by the city to the Water Company for the water system. The city paid $25,000 of that sum in bonds, issued for that purpose, and agreed to pay the balance in installments of $875 each, semiannually, on the first days of January and July, for the period of twelve years, which amounts to $21,000; and it was further agreed that, as additional security for the payment of said sums of $875 semiannually, the city should take possession of the waterworks and collect the water rentals from the water consumers, and pay that sum to the Water Company every six months, as above stated.

Now, the question arises, are those debts within the meaning of the Constitution?

In so far as the $25,000 represented by the bonds are concerned, there is no controversy, as the city concedes their validity, but contends that the $25,000 added to the $21,000 makes a total of $46,000, which is in excess of five per cent of the assessed valuation of the city, which was $603,860, and for that reason the ordinance and contract regarding the $21,000 are in violation of section 12, article 10, of the Constitution, which is as follows:

"No county, city, town, township, school district or other political corporation or subdivision of the State, shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof voting at an election to be held for that purpose; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the assessment for State and

county purposes, previous to the incurring of such indebtedness.''

It will be seen that the section just quoted says no city shall *become* indebted. The indebtedness there mentioned refers to new debts or obligations created or contracted for by the city and does not refer to prior valid debts and obligations of the city, except, however, they must be considered and included in the estimation whenever any new or additional indebtedness is proposed to be saddled upon the city. The object of the Constitution is to prevent the city from going into debt beyond a certain amount and not to extinguish its valid obligations. That being true, it becomes necessary to determine to which of the above classes of indebtedness the $21,000 belongs, to the new or the old.

It must be borne in mind that at the time of the enactment of Ordinance No. 232 this court had, in two cases, held that Ordinance No. 113 and the contract of S. V. Saleno with the city were valid and binding upon the city. [Saleno v. City of Neosho, 127 Mo. 627; Neosho City Water Company v. City of Neosho, 136 Mo. 498.]

Said ordinance No. 113 provided that the City of Neosho shall pay Saleno or his assigns $1,525 semiannually, on the first days of January and July, for twenty years as hydrant rent. The sum total of that item for twenty years is $61,000, which the city was bound to pay according to the terms of that ordinance, conditioned upon Saleno furnishing the water called for thereby.

At the end of the litigation above mentioned, as near as we can ascertain, seven years of the twenty had expired, and at the time when the city purchased the waterworks there was then due the water company for hydrant rentals, interest and costs about $25,000. This sum, at that time, under the terms of Ordinance No. 113 and the decisions before mentioned, had ripened in-

to an absolute and unconditional debt of the city. This twenty-five thousand dollars was paid out of the proceeds of the sale of the bonds provided for in Ordinance No. 232, and the balance thereof, $21,000, was still a conditional liability due the water company, of course, and unpaid on the day the waterworks were transferred to the city. Said $21,000 *was a part* of a larger sum, namely $61,000, the city was conditionally bound to pay Saleno or his assign by said ordinance No. 113, upon *condition* that he furnished the water for the whole twenty years; and by Ordinance No. 232 the city renewed its obligations for that sum to the Water Company upon the terms and conditions therein stated. By this arrangement the city contracted no new debt or obligation, but simply made new arrangements to pay an old debt or a then existing valid obligation, and at the same time canceled $15,000 of its obligation created by Ordinance No. 113 which is shown by deducting the $46,000 from the $61,000. Not only that, the city also became the owner of the waterworks, subject to the payment of the semiannual rental installments of $875, which it had the right to acquire under Ordinance No. 113.

It is shown conclusively from the foregoing statement of facts that the city made no contract whereby it promised to pay the Water Company any sum of money whatever which it did not previously owe to it.

We know of no law prohibiting the city from making new contracts in renewal of prior valid obligations.

Section 11 of article 10 of the Constitution, and statutes enacted in pursuance thereof, came before the Supreme Court of the United States upon the following state of facts: A county in this State by its county court subscribed for stock in a railway company and issued bonds of the county and sold them for the purpose of procuring the money with which to pay for the stock. Under the law as it existed at the time the

bonds were issued the county court had power to levy sufficient taxes to pay the bonds and coupons as they matured, but in 1875 the present Constitution was adopted which limited the power of the county court to levy a tax in excess of one-half of one per cent on the taxable property of the county for all purposes and under that limitation the court was unable to levy sufficient taxes to pay the running expenses of the county and take up the bonds and coupons as they matured. The holders brought suit on the bonds and recovered judgment against the county for the amount of the bonds and coupons, which the county refused to pay because it had no funds on hand for that purpose. The judgment creditor then brought mandamus proceeding against the county court, asking for an order directing said court to make a special assessment, under the old law, which was in force when the bonds were issued, for the payment of the judgment. The Supreme Court in passing upon that case held that the judgment in favor of the bondholder and the bonds and coupons in legal contemplation were but the continuation of the debt incurred by subscribing for the stock of the railway company, and that all the law and machinery thereof which were in force at the time the subscription was made were still in force and would remain so until the judgment was fully paid and satisfied, and that all laws of the State which were passed since the bonds in question were issued purporting to take away from the county court the power to levy taxes necessary to meet the payments were invalid and of no force or effect. [Ralls County Court v. United States, 105 U. S. 733; Scotland County Court v. Hill, 140 U. S. 41.]

While section 11 is a limitation on the taxing power of the city, and section 12 a limitation upon the contracting power, yet the same principle is involved in

each; that is, neither was intended to affect present existing indebtedness regardless of the various forms it might pass through. It might be evidenced by a subscription of stock, an issue of bonds, a contract by way of judgment, or a contract by ordinance. It is the identity of the debt that is looked at and not the evidence of its existence. In this case the original obligation of the city of Neosho to Saleno for the hydrant rent by agreement of the parties and by operation of Ordinance No. 232 was expressly *reserved* and kept alive and carried forward into the compromise contract, and is the same identical obligation that is now involved in this litigation, most of which has ripened into an actual instead of a conditional indebtedness by reason of the fact that the water has been furnished according to the terms of the ordinances and the contract of compromise.

Neither the city of Neosho by ordinance nor the State by an act of the Legislature had any more power to relieve the city of that obligation without the consent of the Water Company than the Legislature had to relieve the county of its obligation to pay the bonds in the case before mentioned, notwithstanding the fact that the debt or obligation may have exceeded the constitutional limit at the time the city purchased the waterworks.

That excess, if it existed, was caused by the wrongful act of the city by not paying the installments of rents as they fell due. This court has twice held that the obligations of the city created by Ordinance No. 113 were valid and binding on the city, notwithstanding section 12 of article 10 of the Constitution. According to those decisions this excess was valid and binding upon the city under the old Ordinance No. 113, then by parity of reasoning the same identical excess which was *expressly* reserved to the Water Company by the contract of sale to the city must also be held to be valid and binding under the new ordinance No. 232.

II. Respondent contends that mandamus will not lie in this case, because relator's claim has not been reduced to judgment.

We do not concur in that contention. The rights of Saleno and the Water Company and those of the city were fully determined and adjudicated in the case of Saleno v. City of Neosho, 127 Mo. 627, and Neosho City Water Company v. City of Neosho, 136 Mo. 498.

All questions as to the validity of the rentals mentioned in Ordinance No. 113 and which are expressly reserved in Ordinance No. 232 cannot be again litigated in this case. [Harshman v. Knox County, 122 U. S. 318; Ralls County Court v. United States, 105 U. S. 734.]

And the judgments are binding upon the parties thereto and their privies, whether in contract, estate, blood or in law, which includes the relator in this case. [Litchfield v. Goodnow, 123 U. S. 551.]

There are many other questions discussed in the briefs of the learned counsel on both sides of this case, but we deem it wholly unnecessary to pass upon them, as the questions herein passed upon fully dispose of the case.

The judgment of the circuit court in favor of both the relator and respondents is reversed and remanded with directions to that court to enter judgment for relator in conformity to the views herein expressed.

*Fox, J.,* concurs.